Friedman and Román, JJ.,
concur in a separate memorandum by Friedman, J, as follows: While the relevant facts are more *509 fully set forth in Justice Manzanet-Daniels’s concurring writing, what I find conclusive for the determination of this appeal are the following undisputed points: (1) the liability policy issued by plaintiff QBE Insurance Corporation to defendant Jinx-Proof Inc. contained an assault-and-battery exclusion; (2) in early 2008, when QBE issued the two letters to Jinx-Proof (quoted in pertinent part by Justice Manzanet-Daniels) on which QBE now relies in disclaiming any further duty to defend or indemnify with regard to the underlying barroom incident, the negligence and Dram Shop Act claims potentially covered by the QBE policy (in addition to an assault claim within the exclusion) were still pending against Jinx-Proof in the underlying personal injury action; and (3) in April 2010, the court in the underlying action dismissed the negligence and Dram Shop Act claims, which left pending against Jinx-Proof only the assault claim clearly within the QBE policy’s assault-and-battery exclusion. On these undisputed facts, QBE is entitled to a declaration that, now that all potentially covered claims in the underlying action have been dismissed, it has no further duty to defend or indemnify Jinx-Proof in that lawsuit.
I emphasize that my vote in favor of the insurer’s position under the particular circumstances of this case does not mean that an insurer is generally permitted to assume the defense of a case under a purported reservation of the right to disclaim liability or deny coverage as to any claim at a later time.[1] Rather, in this particular case, QBE’s use of the term “reservation of rights” in the letters upon which it relies should not be deemed to negate its otherwise clear and unambiguous disclaimer of coverage of claims falling within the policy’s assault-and-battery exclusion because, at the time the letters were issued, QBE was, in fact, obligated to defend even claims falling within that exclusion, and had no right simply to wash its hands of such claims by issuing a disclaimer.[2]
To reiterate, in early 2008, when the letters on which QBE relies were issued, negligence and Dram Shop Act claims potentially covered by the subject policy were still pending *510 against Jinx-Proof in the underlying action. In view of the broad allegations supporting those claims, it cannot be said that the pleading in the underlying action is “cast. . . solely and entirely within the [assault-and-battery] policy exclusion[ ], and . . . that the allegations, in toto, are subject to no other interpretation” (Automobile Ins. Co. of Hartford, v Cook, 7 NY3d 131, 137 [2006] [internal quotation marks omitted]). Accordingly, while those negligence claims potentially within the scope of its coverage were pending, QBE was obligated to defend Jinx-Proof in the underlying action, given that an insurer’s duty to defend is “broader than [its] duty to indemnify” (Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc., 16 NY3d 257, 264 [2011]) and that the duty to defend “arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy” (id. [internal quotation marks omitted]). Moreover, and most critically here, QBE’s duty to defend, while it was in effect, extended even to claims that fell within the assault-and-battery exclusion (for which it would have no duty to indemnify). As the Court of Appeals has explained, “if any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action” (id. [internal quotation marks omitted]), and “[i]t is immaterial that the complaint against the insured asserts additional claims which fall outside the policy’s general coverage” (id. at 265 [internal quotation marks omitted]).
In view of the foregoing principles, because the complaint in the underlying action pleaded claims against the insured potentially within the scope of QBE’s coverage, QBE was obligated to defend the entire action—including claims within the scope of the assault-and-battery exclusion—until the potentially covered claims were dismissed. Thus, at the time Jinx-Proof tendered its defense to QBE, QBE had no right simply to disclaim any duty with regard to the claims falling within the scope of the exclusion. This being the case, QBE had no choice, upon tender of Jinx-Proofs defense, but to reserve its right to invoke the assault-and-battery exclusion at such future time as it might become entitled to do so. Once the potentially covered claims were dismissed, QBE had no further obligations to Jinx-Proof with respect to the remaining claims against it, all of which fall within the exclusion, which QBE had timely invoked upon tender of the claim. Accordingly, Supreme Court correctly granted QBE’s motion for summary judgment declaring its duty to defend and indemnify Jinx-Proof to be at an end. I note that we are modifying the order appealed from only to issue the declaration to which QBE is entitled.

. Generally, with respect to a claim arising from death or bodily injury, a liability insurer is required to give the insured written notice of a disclaimer of liability or denial of coverage “as soon as is reasonably possible” (Insurance Law § 3420 [d] [2]), and the time within which to issue such a disclaimer or denial cannot be extended by reserving the right to do so in the future (see Allstate Ins. Co. v Gross, 27 NY2d 263 [1970]).

. QBE relies on two letters, one issued three days after it received notice of the claim from Jinx-Proof and the other issued 29 days after it received such notice. Since the first letter was clearly timely, I see no need to address the timeliness of the second letter.